UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PSYCHIATRIC SOLUTIONS, et al., | ) | Case No. 1:13CV0098 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JUDGE LESLEY WELLS |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| WALLER LANSDEN DORTCH & | ) | |
| DAVIS, LLP, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, Mag. J.

The plaintiff Windsor- Laurelwood Center for Behavioral Medicine ("Laurelwood") filed suit against defendants Waller Lansden Dortch & Davis, LLP, attorney Mark Peters, and attorney W. Judd Peak.  The amended complaint ("amended complaint," or simply, "complaint") contains three counts:  (1) legal malpractice, against defendants Peters and Peak; (2)  fraud, against defendants Peters and Peak; and (3) vicarious liability/ respondeat superior, against defendant Waller.  The amended complaint seeks compensatory and punitive damages.  (Doc. 25, Am. Compl.)

The defendants had represented Laurelwood in a prior employment discrimination action brought against Laurelwood.  Laurelwood's  allegations stem from the defendants' handling of discovery documents and certain representations made to Laurelwood during the course of their attorney-client relationship.

The defendants have filed a motion to dismiss the fraud count, and the request for punitive damages.  (Doc. 27, and exhibits, doc. 28.)  The plaintiffs have filed a memorandum in opposition.  (Doc. 29.)  The defendants have filed a reply (doc. 30), with supplemental authority (doc. 31).  The plaintiffs have weighed in on the supplemental authority.  (Doc. 32.)

## I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Until fairly recently, the standard for a motion to dismiss for failure to state a claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996).  However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), the Supreme Court modified the standard, in particular the "no set of facts" phrase.

The Court's ruling in Twombly abrogated Conley, and moved away from the pure notice pleading standards that had previously been a hallmark of the Civil Rules.  The Twombly Court asserted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

2

Twombly, 550 U.S. at 555 (citations omitted).  See also Gunasekera v. Irwin, 551

F.3d 461, 466 (6th Cir. 2009); Association of Cleveland Fire Fighters v. City of

Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).  The Court protested that "we do not

require heightened fact pleading of specifics, but only enough facts to state a claim

to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Compare 5 Wright

& Miller, Federal Practice and Procedure, § 1216 (2004) ("Conspicuously absent

from Federal Rule 8(a)(2) is the requirement found in the [earlier] codes that the

pleader set forth the 'facts' constituting a 'cause of action'.")  Justice Stevens, in

dissent, characterized the decision as a "dramatic departure from settled procedural

law."  Twombly, 550 U.S. at 573 (Stevens, J, dissenting).

In Ashcroft v. Iqbal, the Court clarified that the new Twombly standard is

not intended to be limited to complicated litigation, such as the antitrust conspiracy

case in Twombly.  Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court asserted that

the new pleading standards governing Rule 8(a) do not require "detailed factual

allegations," however they do require "factual enhancement."  Iqbal, 556 U.S. at

678.  Only "a complaint that states a plausible claim for relief" will survive a motion

to dismiss.  Id. at 679.

The Court summarized its new "plausibility" standard as follows:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim to relief that is
> plausible on its face."  A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a "probability requirement," but it
> asks for more than a sheer possibility that a defendant has acted

> unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. 554).  See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard).  In other words, when resolving a motion to dismiss, the court is now required to locate the allegations of the complaint on a possibility – plausibility – probability continuum.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8.  The function of the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses.  Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  Rather, the court is simply to determine "whether a complaint states a plausible claim for relief."  Iqbal, 556 U.S. at 679.

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint.  Miller, 50 F.3d at 377.  The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true.  Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir. 1997).  However, the court is "not bound to accept as true a legal conclusion couched

4

as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## II.  FRAUD

The second count of the amended complaint alleges fraud against defendants

Peters and Peak, as follows:

> 61.  Defendants Peters and Peak . . . represented to Plaintiff on or
> about December 20th and 26th, 2011[,] and January 6, 2012[,] that all
> documents had been produced, there were no additional responsive
> documents, that a privilege log was unnecessary and that Defendants
> Peters and Peak were not hiding documents.  These representations
> were material to the handling of The Case, the defense of Muhammad-
> Smith's claims in The Case and the attorney-client relationship
> between Plaintiff and Defendants.
>
> 62.  Defendants Peters and Peak knew at the time the representations
> were made that they were false or made such representations with
> utter disregard and recklessness as to whether or not the
> representations were true or false such that knowledge may be
> inferred.  Further, Defendant Peters as a principal and shareholder of
> Defendant Waller knowingly authorized, participated in and ratified
> the misrepresentations made to the Plaintiff.
>
> 63.  Defendants Peters and Peak made the misrepresentations with
> the intent of misleading Plaintiff, among others, into relying upon the
> misrepresentations for the purposes of concealing their failure to
> comply with the rules of discovery, their discovery abuses, their
> violations of fiduciary duties owed to the Plaintiff,  their conflicts of
> interest and violations of the Ohio Rules of Professional Conduct,
> including Rules 1.7, 3.4, 8.4 and 3.7 and to avoid potential disciplinary
> actions and were committed for their own personal gain beyond
> maintaining Plaintiff as a client and the continued earning of fees.
>
> 64.  Defendants Peters and Peak, as a result of the attorney-client
> relationship also had an affirmative duty to disclose to Plaintiff all the
> facts they were concealing as set forth above.
>
> 65.  Plaintiff was not in possession of The Withheld Documents or was
> otherwise unaware of them.   Defendants Peters and Peak knew that

5

Plaintiff was not in possession of The Withheld Documents and/or was unaware of them and would rely on their representations. Plaintiff justifiably relied upon the representations of Defendants Peters and Peak made in their emails of January 6, 2012[,] and December 20th and 26th, 2011[,] and in the opposition to the Motion for Sanctions.

66. As a direct and proximate result of Defendants Peters and Peak's misrepresentations and fraud Plaintiff sustained injuries and harm including, but not limited to an inability to use The Withheld Documents in defending against Muhammad-Smith's claim including the Motion for Summary Judgment,; sanctions for discovery abuse; created arguments in The Case and in trial of calculated deception by Defendants Peters and Peak with the [false] implication that Plaintiff was complicit; substantially increasing the probability of a large damage verdict including punitive damages; fees paid as a result of the misconduct of Defendants Peters and Peak; fees paid to Defendants incurred while Defendants Peters and Peak continued to represent Plaintiff despite its undisclosed conflicts of interest; attorney's fees and costs paid to subsequent counsel of the firm Reminger Company, L.P.A. to attempt to mitigate and ameliorate the misconduct of Defendants Peters and Peak; and settlement paid to Muhammad-Smith in an amount substantially higher than it otherwise would have been, but for the fraud and misconduct of Defendants Peters and Peak.

67. Consequently, the actions of Defendants Peters and Peak regarding the Muhammad-Smith case, as previously described, constitute fraud, separate and distinct from any legal malpractice claim.

(Doc. 25, Am.Compl., at ¶¶ 60-67.)

The defendants' joint motion to dismiss contends that the fraud claim should be dismissed on several theories. See generally doc. 27, at 5-15.


## A.  Justifiable Reliance

First, the defendants argue that the allegations of count two do not satisfy Rule 9(b)'s requirement that each element of fraud be pled with particularity. (Doc.

27, at 6-9.)  Specifically, the defendants assert that the complaint "does not set forth

sufficient allegations of Laurelwood's alleged 'justifiable reliance on the

representation or concealment.'"  (Doc. 27, at 7.)

Because claims alleging fraud pose "a high risk of abusive litigation," a party

making fraud allegations "must state with particularity the circumstances

constituting fraud."  Republic Bank & Trust Co. v. Bear Stearns & Co., Inc., 683

F.3d 239, 247 (6th Cir. 2012) (citing Twombly, 550 U.S. at 569 n.14; and Civil Rule

9(b).)  Under Ohio law, the elements of an action for fraud are:

> (a) a representation or, where there is a duty to disclose, concealment
> of a fact, (b) which is material to the transaction at hand, (c) made
> falsely, with knowledge of its falsity, or with such utter disregard and
> recklessness as to whether it is true or false that knowledge may be
> inferred, (d) with the intent of misleading another into relying upon it,
> (e) justifiable reliance upon the representation or concealment, and (f)
> a resulting injury proximately caused by the reliance.

Gaines v. Preterm-Cleveland, Inc., 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712

(1987); see also Groob v. KeyBank, 108 Ohio St.3d 348, 357, 843 N.E.2d 1170, 1178

(2006).

Ohio courts have ruled that "a cause of action for fraud will only lie when the

complainant actually relied upon the representation, to her detriment, and the

claimed injury must flow from the complainant's reliance on the alleged

misrepresentation."  Morgan Stanley Credit Corp. v. Fillinger, 979 N.E.2d 362, 368

(Ohio Ct. App. 2012).  Under federal pleading standards, the complaint "must state

with particularity the false statement of fact made by the defendant which the

plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false

statement of fact." Blount Fin. Serv., Inc. v. Walter E. Heller and Co., 819 F.2d 151, 152-153 (6th Cir. 1987). Because justifiable reliance is an essential element of any fraud claim, the complaint must contain sufficient factual allegations of justifiable reliance to survive dismissal. Seldon v. Home Loan Serv., Inc., 647 F.Supp.2d 451, 472 (E.D. Pa. 2009).

Similarly, where the pleading fails to identify specific statements that are allegedly fraudulent, fails to identify the specific speaker(s), and fails to detail when and where the alleged statements were made, the complaint fails to meet the pleading standards for fraud under Civil Rule 9(b). See, e.g., Gupta v. Terra Nitrogen Corp., 10 F.Supp.2d 879, 883 (N.D. Ohio 1998). See also Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 564 (6th Cir. 2003) (failure to identify specific parties or fraudulent acts requires dismissal).

The defendants contend that the Amended Complaint fails to meet the particularity requirements of Rule 9(b), because it does not set forth sufficient allegations of Laurelwood's "justifiable reliance on the representation or concealment." (Doc. 27, at 7.) The defendants state that Paragraph 65 of the complaint alleges that Laurelwood "justifiably relied upon the representations of Defendants Peters and Peak made in their emails of January 6, 2012[,] and December 20th and 26th, 2011[,] and in the opposition to the Motion for Sanctions." (Doc. 27, at 7, citing doc. 25, at ¶ 65; see also doc. 25, at ¶ 32.) They assert that this language is the sole allegation of Laurelwood's purported "justifiable reliance" on defendants' alleged misrepresentations, and that the allegation is insufficient as a

8

matter of law. (Doc. 27, at 7.)

The defendants argue that "rote incantation of the essential elements of a cause of action" does not satisfy the pleading standards of Twombly. (Doc. 27, at 7, citing Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013).) The Sixth Circuit has stated that "threadbare recitals" of the elements of a cause of action, "supported by mere conclusory statements, do not suffice." Smith v. Bank of America Corp., No. 11-1406, 2012 WL 2301645, at *1 (6th Cir. June 18, 2012) (citing Iqbal, 556 U.S. at 678). See also Amick v. Ohio Dep't of Rehab. & Corr., No. 12-3515, 2013 WL 1223570, at *2 (6th Cir. Mar. 27, 2013) (complaint which merely recites elements of cause of action does not suffice); Thompson v. City of Memphis, No. 11-6146, 2012 WL 3194489, at *4 (6th Cir. Aug. 7, 2012).

The defendants assert that there is no explanation as to how Laurelwood actually relied on the alleged misrepresentations, and that the omission of such detail is fatal to a fraud claim. (Doc. 27, at 8, citing cases.)

In the memorandum in opposition, the plaintiff asserts that the Amended Complaint "sets forth specific facts and circumstances demonstrating how Plaintiff reasonably relied upon Defendants Peters' and Peak's misrepresentations and concealment." (Doc. 29, at 9.) In support of this assertion, Laurelwood points to several specific paragraphs of the complaint, incorporated into their fraud claim. (Doc. 29, at 10, citing doc. 25, Am. Compl., at ¶¶ 30, 35, 42-51, and 66; see also ¶ 60.) Paragraphs 30 and 35 outline the alleged misrepresentations and concealment by Peters and Peak. (Doc. 25, Am. Compl., at ¶¶ 30, 35.) Paragraphs 42 through 51

9

recite the review of the case file by new counsel, and subsequent actions taken by Muhammad-Smith and the trial court.  ([Doc. 25](), at ¶¶ 42-51.)  Finally, paragraph 66 outlines the alleged consequences which occurred "as a direct and proximate result" of Peters and Peak's alleged misrepresentations.  ([Doc. 25](), at ¶ 66.)

The defendants also contend that the amended complaint "provides no explanation of why Laurelwood's purported reliance on the alleged misrepresentations was justifiable."  ([Doc. 27](), at 8.)

Laurelwood argues that its reliance on the alleged misrepresentations was justifiable because defendants were their legal counsel, who each owed to Laurelwood a fiduciary duty, including the duty of full disclosure.  ([Doc. 29](), at 6-9, citing [doc. 25](), at ¶¶ 8, 64.)  Paragraph 8 asserts that defendant "Waller, through its lawyers . . . was Plaintiff's regular outside labor and employment counsel," which represented Laurelwood in the Muhammad-Smith case.  Laurelwood alleges that, as a result of the attorney-client relationship, "Defendants owed to Plaintiff a fiduciary duty including a duty of undivided loyalty, independent judgment, good faith and full disclosure."  ([Doc. 25](), at ¶ 8.)  Paragraph 64 states that Peters and Peak "as a result of the attorney-client relationship also had an affirmative duty to disclose to Plaintiff all facts they were concealing as set forth above."  ([Doc. 25](), at ¶ 64.)

Laurelwood thus contends its reliance would be justifiable because an attorney-client relationship existed, and Laurelwood relied on counsel to prosecute its case and keep Laurelwood as client informed of all relevant developments.  (Doc.

10

29, at 7-8, citing Marro v. Adamski & Conti, No. 97C8805, 1998 WL 704095, at *3 (N.D. Ill. Sept. 23, 1998) (clients necessarily rely on attorneys' representations); Finomore v. Epstein, 18 Ohio App.3d 88, 90, 481 N.E.2d 1193, 1196 (Ohio Ct.  App. 1984) (clients entitled to rely on representations of fiduciary); and other cases.)  See also  doc. 25, at ¶¶ 8, 14.

The court does not find merit in defendants' contention that the Amended Complaint fails to meet the particularity requirements of Rule 9(b), because it does not set forth sufficient allegations of Laurelwood's "justifiable reliance on the representation or concealment."

### B.  Legal Malpractice Only, Not Fraud

The defendants also argue that the fraud count must be dismissed because alleged misrepresentations by an attorney to a client regarding the conduct of litigation are actionable only as legal malpractice, not fraud.  (Doc. 27, at 9-13.)

The defendants claim it is "well established under Ohio law that '[a]n action against one's attorney for damages resulting from the manner of representation is an action for malpractice regardless of whether based upon contract or tort or whether for indemnification or for direct damages." (Doc. 27, at 9, quoting B&B Contractors & Developers, Inc. v. Olsavsky Jaminet Architects, Inc., No. 12-MK-5, 2012 WL 6617391, at *7 (Ohio Ct. App. Dec. 14, 2012).)  They cite caselaw which holds that, "when the gist of a complaint is malpractice, other duplicative claims are subsumed in the malpractice claim and the court can construe the complaint as only

11

presenting a malpractice claim." (Doc. 27, at 9, quoting B&B Contractors, 2012 WL 6617391, at *7 (citing cases).)

The defendants point out that the amended complaint "makes clear that all of the allegedly false statements were made during the course of Defendants' representation of their clients, and all of the statements were related to the legal services that Defendants were providing and the manner in which those services were provided." (Doc. 27, at 9-10.)  Under those circumstances, defendants contend, an independent cause of action for fraud is not cognizable. (Doc. 27, at 10-13, citing cases.)

Laurelwood responds that attorneys who engage in fraudulent conduct are not immune from fraud claims simply because they are attorneys. "When an attorney acts for his own personal gain, the actions may constitute a cause of action for fraud separate from a legal malpractice claim." (Doc. 29, at 10.)  Laurelwood asserts that the amended complaint alleges "specific facts" demonstrating that Peters and Peak's "misrepresentations and concealment were committed for their own personal gain and that such gain was beyond that of maintaining Plaintiff as a client and the continued earning of fees." (Doc. 29, at 13.)

It is worthwhile to revisit the specific allegations of the amended complaint at this point.  Relevant to the discussion here are the following allegations of the second count (fraud) of the amended complaint:

> 61.  Defendants Peters and Peak . . . represented to Plaintiff on or about December 20th and 26th, 2011[,] and January 6, 2012[,] that all documents had been produced, there were no additional responsive

12

documents, that a privilege log was unnecessary and that Defendants Peters and Peak were not hiding documents.  These representations were material to the handling of The Case, the defense of Muhammad-Smith's claims in The Case and the attorney-client relationship between Plaintiff and Defendants.

\* \* \* \* \*

63.  Defendants Peters and Peak made the misrepresentations with the intent of misleading Plaintiff, among others, into relying upon the misrepresentations for the purposes of concealing their failure to comply with the rules of discovery, their discovery abuses, their violations of fiduciary duties owed to the Plaintiff,  their conflicts of interest and violations of the Ohio Rules of Professional Conduct, including Rules 1.7, 3.4, 8.4 and 3.7 and to avoid potential disciplinary actions and were committed for their own personal gain beyond maintaining Plaintiff as a client and the continued ear'ing of fees.

(Doc. 25, Am.Compl., at ¶¶ 61, 63.)

A malpractice claim is one that arises from a lawyer's professional services.  Wilkey v. Hull, 598 F.Supp.2d 823, 830 (S.D. Ohio 2009), aff'd, 2010 WL 653547 (6th Cir. Feb. 24, 2010).  Malpractice consists of "the professional misconduct of members of the medical profession and attorneys."  Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis, No. 1:11CV851, 2014 WL 868251, at *3 (S.D. Ohio Mar. 5, 2014) (quoting Muir v. Hadler Real Estate Mgmt. Co., 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (Ohio Ct. App. 1982)).  The Sixth Circuit has noted that an "action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice" under Ohio law, regardless of whether predicated upon contract or tort.  Omlin v. Kaufman & Cumberland Co., L.P.A., No. 00–4003, 2001 WL 493387, at *2 (6th Cir. May 1, 2001), cert. denied, 534 U.S. 1022 (2001) (quoting Muir, 4 Ohio App.3d 89, 446

N.E.2d at 822); see also Waite, Schneider, 2014 WL 868251, at *3; Dottore v. Vorys, Sater, Seymour & Pease, LLP, No. 98861, 2014 WL 72538, at *6 (Ohio Ct. App. Jan. 9, 2014).  The court stated:  "It makes no difference whether the professional misconduct is found in tort or contract, it still constitutes malpractice."  Omlin, 2001 WL 493387, at *2 (quoting Muir).

"Clothing a malpractice action in the language of fraud does not convert the action into one based on fraud."  Wilkey, 598 F.Supp.2d at 830 (quoting Dingus v. Kirwan, No. E-05-082, 2006 WL 2384070, at *2 (Ohio Ct. App. Aug. 18, 2006)).  Where "the gist of a complaint is malpractice, other duplicative claims are subsumed in the malpractice claim and the court can construe the complaint as only presenting a malpractice claim."  B&B Contractors, 2012 WL 6617391, at *7; see also Dottore, 2014 WL 72538, at *7.  For example, where a breach of contract claim is based on the manner in which attorneys provided advice and counsel, the claim alleges attorney malpractice, regardless of whether predicated on contract or tort.  JS Products, Inc. v. Standley Law Group, LLP, No. 09CV311, 2010 WL 3702638, at *4 (S.D. Ohio Sept. 16, 2010), aff', 2011 WL 2292278 (Fed. Cir. June 10, 2011).

As Laurelwood has noted, "attorneys may engage in fraudulent or tortious conduct, and they are not immune from such claims simply because they are attorneys."  Wilkey, 598 F.Supp.2d at 830.  The Wilkey court points to an instance where "fraud claims against attorneys based upon intentional overbilling of a client survived a motion to dismiss."  Id.  The court noted, however, that "the claim was premised on ordinary business dealings, billing for services rendered, and not out of

14

the exercise of an attorney's professional judgment during the course of representing a client." Id.  In contrast, the court stated that " independent tort claims do not arise from the rendition of legal services."  Wilkey, 598 F.Supp.2d at 831.

Other Ohio courts have found that legal malpractice even extends to overcharging a client for legal services, or billing errors, see, e.g., Heuker v. Roberts, Kelly & Bucio, LLP, 998 N.E.2d 827, 832-833 (Ohio Ct. App. 2013) (citing cases); Wilkerson v. O'Shea, No. CA2009-03-068, 2009 WL 4810187, at *2-*3  (Ohio Ct. App. Dec. 14, 2009), which could result in personal gain to the attorney.  In addition, "a desire to obtain a settlement and resulting contingent fee was not the type of personal gain that would support an action for fraud separate from a malpractice action."  Gullatte v. Rion, 145 Ohio App.3d 620, 626, 763 N.E.2d 1215, 1219 (Ohio Ct.  App. 2000).

A party may assert claims for fraud, breach of contract, or breach of fiduciary duty if the conduct underlying those claims is distinct from the conduct underlying the malpractice claim. Waite, Schneider, 2014 WL 868251, at *3 (citing Pierson v. Rion, No. CA23498, 2010 WL 1636049, *2 (Ohio Ct. App. Apr. 23, 2010).  A separate claim based on contract, for example, could only proceed "where the alleged conduct to support that claim is distinct from the conduct underlying the malpractice claim." B&B Contractors, 2012 WL 6617391, at *7.

In Wilkey, the defendant attorney failed to disclose a report arguably favorable to plaintiff, or to include it in the record for an evidentiary hearing.  The

15

court stated that:  "Even if it was a questionable decision[1], it was a decision made within the scope of [defendant's] professional representation of his client."  Despite repeated allegations of fraud and malicious intent, the court found "no evidence in the record establishing or raising a reasonable inference that [defendant's] actions or inactions were anything other than decisions made occurring during his professional representation of his client."  Wilkey, 598 F.Supp.2d at 831.

A recent decision[2] by a panel of the Ohio Court of Appeals clarifies the proper "manner of representation" test:

> . . . a cause of action will be subsumed into a malpractice claim if it arises out of "the manner in which the attorney represented the client." Muir, 4 Ohio App.3d at 90, 446 N.E.2d 820.  This standard focuses on whether the claim involves professional misconduct, which is a narrower focal point than merely determining whether there was an attorney-client relationship.

Dottore, 2014 WL 72538, at *7.  In Dottore, the court pointed out that the fraud claim at issue was based on the defendants' failure to advise the plaintiff "of the same conduct that they also charged as legal malpractice, and the failure to inform a client that malpractice has occurred is not a tort separate from the malpractice itself. "  Dottore, 2014 WL 72538, at *8.  In addition, the court noted that the

---

[1] The defendant-attorney believed the report was not relevant, because plaintiff  had "insisted that the hearings be limited to evidence actually considered by the committees in reaching their decisions."  Wilkey, 598 F.Supp.2d at 830.

[2] Laurelwood urges the court to ignore Dottore, doc. 32, at 2, as well as other cases relied upon by the defendants, doc. 29, at 11, because the legal discussion took place in the context of applying a statute of limitations.  The court does not find that this circumstance undermines the validity of the courts' legal conclusions in any material way.

16

allegation of "personal gain" was nothing more than "keeping the [plaintiffs'] business and avoiding a malpractice claim." Id. "This is not the type of personal gain that elevates a concealment during the course of legal representation from an act of malpractice to an act of fraud." Dottore, 2014 WL 72538, at *8 (citing Gullatte, 145 Ohio App.3d at 627, 763 N.E.2d 1215.)

Thus, the key issue is whether Laurelwood's fraud claim arose from the manner in which the defendant lawyers represented Laurelwood. If it does, then the malpractice claim subsumes that claim. If it is distinct, however, then the fraud claim may survive dismissal on that basis. See, e.g., Waite, Schneider, 2014 WL 868251, at *3.

Laurelwood argues that the amended complaint alleges "specific facts" demonstrating that Peters and Peak's "misrepresentations and concealment were committed for their own personal gain and that such gain was beyond that of maintaining Plaintiff as a client and the continued earning of fees." (Doc. 29, at 13.) Laurelwood claims that the alleged misconduct was for the purpose of "concealing from Plaintiff, among others, their failure to comply with the Rules of Discovery, their discovery abuses, their violations of fiduciary duties owed to Plaintiff, their conflicts of interest and violations of the Ohio Rules of Professional Conduct . . . and to avoid disciplinary action." (Doc. 29, at 13-14, citing doc. 25, at ¶¶ 33, 63-64.)

It is unclear to this court exactly how "concealing their failure to comply with the rules of discovery, their discovery abuses, their violations of fiduciary duties

17

owed to the Plaintiff,  their conflicts of interest and violations of the Ohio Rules of Professional Conduct . . . .and to avoid potential disciplinary actions" (doc. 25, Am.Compl., at ¶ 63) would lead to any "personal gain" to Peters or Peak.  In other words, it is not clear how these alleged misrepresentations or concealments would lead to any alleged "personal gain beyond maintaining Plaintiff as a client and the continued earning of fees."

The word "gain" generally indicates some increase, rather than simply an avoidance of unpleasant consequences.  For example, "gain" is defined in one authoritative dictionary as:

> 1. an increase; addition; specif., a) an increase in wealth, earnings, etc; profit; winnings; b) an increase in advantage; advantage; improvement
>
> 2. the act of getting something; acquisition; accumulation

Webster's New World College Dictionary 579 (4th ed. 2007).  See also Black's Law Dictionary 792 (10th ed. 2014) ("An increase in amount, degree, or value").  The defendants assert that "Laurelwood cannot identify any benefit or thing of value that could have been gained by Messrs. Peters and Peak by virtue of the alleged fraud."  (Doc. 30, at 8.)

It is impossible from the allegations of the amended complaint to make a reasonable inference of some "gain" which defendants could have realized by their alleged actions.  See, e.g., DiPaolo v. DeVictor, 51 Ohio App.3d 166, 173, 555 N.E.2d 969, 976 (Ohio Ct. App. 1988).  The allegations do not lead to a reasonable inference that defendants' actions or inactions were anything other than decisions made

occurring during their  professional representation of Laurelwood.  See, e.g.,

Wilkey, 598 F.Supp.2d at 831.

The allegations of the amended complaint lead to the clear conclusion that

Laurelwood's purported fraud claim arose from the manner in which the defendant

lawyers represented Laurelwood, and the malpractice claim subsumes that claim.

There is no separate claim for fraud here; the gist of the claim is legal malpractice.

See, e.g., Omlin, 2001 WL 493387, at *2 (malpractice by any other name still

constitutes malpractice); Wilkey, 598 F.Supp.2d at 831; Mohler v. Unger, No.

C3–90–284, 1994 WL 1860577, at *10 (S.D. Ohio Aug. 26, 1994); Wilkerson, 2009

WL 4810187; DiPaolo, 51 Ohio App.3d at 173, 555 N.E.2d at 976.  The fraud claim

should be dismissed.


## C.  Defendant Peak

The defendants argue that because the fraud claim is based on the three e-

mails, and none of them was authored by Defendant Peak, Count 2 must be

dismissed as to Peak.  (Doc. 27, at 16-17.)

The three e-mail messages referenced in Count 2 are dated Dec. 20 and 26,

2011, and Jan. 6, 2012.  See, e.g., doc. 25, at ¶ 61; see also ¶¶ 30, 32.  These

messages communicate the alleged misrepresentations behind the fraud claim.

(Doc. 25, at ¶¶ 30, 32, 61-67.)

Although the messages are not attached to the complaint, they are integral to

the second count, and where the plaintiff "fails to introduce a pertinent document as

part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."  Thomas v. Publishers Clearing House, Inc., No. 00–3948, 2002 WL 193935, at *2 (6th Cir. Feb. 5, 2002).  The defendants have produced these messages to accompany their motion to dismiss.  (Doc. 28.)  Reference to the e-mails demonstrates that all three were sent by "Mark Peters," and none of them refers to Peak as the author or recipient.  (Doc. 28, DX A, B, C.)

Laurelwood is required to satisfy the Rule 9(b) standards as to each defendant against whom fraud is alleged.  In re National Century Fin. Ent., Inc., 504 F.Supp.2d 287, 315 (S.D. Ohio 2007) (quoting SEC v. Blackwell, 291 F.Supp.2d 673, 686 (S.D. Ohio 2003)).  As discussed earlier, the complaint "must state with particularity the false statement of fact made by the defendant which the plaintiff relied on."  Blount Fin. Serv., 819 F.2d at 152-153.  If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them.  Wiener v. Napoli, 760 F.Supp. 278, 284 (E.D. N.Y. 1991).  No specific communication or concealment is identified as to Peak. See generally doc. 25, at ¶ 61; see also ¶ 32.

Laurelwood responds to this argument by stating that "Peak's intentional failure to advise" Laurelwood of the withheld documents, and that the three e-mails (and the attached draft) were false, constitutes concealment.  (Doc. 29, at 5-6).  The court does not find this argument persuasive as to the necessary particularity required by Rule 9(b), and lacking in the complaint.  The court finds the amended

complaint does not state a plausible claim for relief against Peak. Iqbal, 556 U.S. at 679. The second count should be dismissed as to Peak.

### D. Fraud Claim and Third-Party Statements

The defendants claim that, to the extent the fraud claim is based on the Jan. 6, 2012, e-mail, the claim must be dismissed because the representations at issue there were not made to Laurelwood, and Ohio law does not permit a fraud claim based on statements to a third party. (Doc. 27, at 13-15.) Laurelwood responds that the Jan. 6 e-mail was not directed to a third party but rather to Laurelwood's employees, including in-house counsel. (Doc. 29, at 4.) The defendants' argument is not persuasive, and the fraud claim should not be dismissed on this basis.

### E. Fraud Count: Summary

The court finds that the second count (fraud) should be dismissed on the grounds that the malpractice claim subsumes the fraud claim, because the gist of the claim is legal malpractice. In addition, the court finds that the amended complaint is lacking the required particularity as to the fraud claim against Peak. However, the court does not find defendants' argument well-taken that the amended complaint fails to meet the particularity requirements of Rule 9(b), because it does not set forth sufficient allegations of Laurelwood's "justifiable reliance."

21

### III.  PUNITIVE DAMAGES

The defendants move that Laurelwood's demand for punitive damages be dismissed.  (Doc. 27, at 17.)  They point out that, by statute, punitive damages may only be awarded in Ohio where the defendant's acts or omissions "demonstrate malice or aggravated or egregious fraud."  (Doc. 27, at 17, citing Ohio Rev. Code § 2315.21(C)(1).)

Punitive damages may be recovered against a party, upon adequate proof, through a cause of action for legal malpractice.  Wagner v. Galipo, No. 47876, 1984 WL 5292, at *8 (Ohio Ct. App. Oct. 25, 1984).  Under Ohio law, punitive damages can be awarded through a showing of clear and convincing evidence.  McCombs v. Meijer, Inc., 395 F.3d 346, 355 (6th Cir. 2005).

The Supreme Court of Ohio has found that actual malice is required for an award of punitive damages:

> Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

Preston v. Murty, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987) (syllabus); see also McCombs, 395 F.3d at 355.

The state high court later clarified its holding in Preston, stating:

> . . . punitive damages are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable.  This mental state is the component of the standard contained in the phrase "conscious disregard for the rights and safety of other persons * * *."

22

Calmes v. Goodyear Tire & Rubber Co., 61 Ohio St.3d 470, 473, 575 N.E.2d 416,

419 (1991) (quoting Preston, 32 Ohio St.3d at 335, 512 N.E.2d at 1176).  "Liability

for punitive damages is reserved for particularly egregious cases involving

deliberate malice or conscious, blatant wrongdoing which is nearly certain to cause

substantial harm."  Spalding v. Coulson, No. 70524, 1998 WL 564054, at *16 (Ohio

Ct. App. Sept. 3, 1998).  In other words, "to warrant the imposition of additional

punitive damages, above and beyond compensatory damages, the tort must be

committed with a particularly depraved mental state."  Spalding, 1998 WL 564054,

at *16.

Punitive damages are only available when conscious wrongdoing is involved.

Alleman v. YRC, 787 F.Supp.2d 679, 684 (N.D. Ohio 2011).  More than mere

negligence is required:

> The concept requires a finding that the probability of harm occurring is
> great and that the harm will be substantial.  A possibility or even
> probability is not enough as that requirement would place the act in
> the realm of negligence.

Alleman, 787 F.Supp.2d at 684 (quoting Preston, 32 Ohio St.3d 334, 512 N.E.2d at

1176); see also Calmes, 61 Ohio St.3d at 473, 575 N.E.2d at 419.  Recklessness or

carelessness will not justify the imposition of punitive damages.  Spalding, 1998 WL

564054, at *16.

It is not sufficient to simply request punitive damages in the prayer for relief.

Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc., 721 F.Supp.2d 663, 676 (N.D.

Ohio 2010) (citing Lum v. Mercedes Benz USA, LLC, No. 3:05CV7191, 2006 WL

23

1174228, at *2 (N.D. Ohio Apr. 18, 2006)).  The plaintiff must allege sufficient facts

in the complaint from which the essential elements of actual malice may be

inferred.  Patel v. Zervas, No. 2:13CV499, 2013 WL 6504695, at *3 (S.D. Ohio Dec.

10, 2013) (citing cases); Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc., No.

07CV1005, 2008 WL 746669, at *12 (N.D. Ohio Mar. 18, 2008), aff'd, 2012 WL

3201651 (6th Cir. Aug. 7, 2012).

The amended complaint relies on the "conscious disregard" prong of actual

malice:

> Defendants Peters and Peak's misrepresentations, fraud and continued
> concealment of The Withheld Documents was in conscious disregard of
> Peters and Peak's duties owed to Plaintiff including the right of full
> disclosure and Plaintiff's right to have Defendants Peters and Peak's
> undivided loyalty and independent judgment (among other rights) that
> had a great probability of causing substantial harm . . .

(Doc. 25, Am. Compl., at ¶ 34; see also ¶ 54; doc. 29, at 17.)  The defendants argue

that these allegations are insufficient as a matter of law for a claim for punitive

damages to proceed.  (Doc. 27, at 18.)

The allegations of the amended complaint do not rise to "actual malice,"

insofar as the allegations do not plausibly allege "conduct resulting from a mental

state so callous in its disregard for the rights and safety of others that society deems

it intolerable."  Calmes, 61 Ohio St.3d at 473, 575 N.E.2d at 419;  Preston, 32 Ohio

St.3d at 335, 512 N.E.2d at 1176.  See generally doc. 25, at ¶¶ 34, 54; doc. 28, DX A,

B, C.  The allegations do not portray a "particularly egregious" case "involving

deliberate malice or conscious, blatant wrongdoing."  Spalding, 1998 WL 564054, at

24

*16.

The court finds the allegations of "conscious disregard" underlying the claim for punitive damages do not have facial plausibility; Laurelwood does not plead factual content which would allow the court to draw the reasonable inference that the defendants would be liable for punitive damages in addition to any compensatory damages.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. 554.

## IV.  SUMMARY

The motion to dismiss (doc. 27) should be granted.  The second count of the amended complaint alleging fraud should be dismissed because the malpractice claim subsumes the fraud claim.  In addition, the amended complaint is lacking the required particularity as to the fraud claim against Peak.

The court finds the allegations of "conscious disregard" underlying the claim for punitive damages do not have facial plausibility, and the claim for punitive damages should be dismissed as well.

25

RECOMMENDATION

The motion to dismiss (doc. 27) the claims for fraud and punitive damages should be GRANTED.


Dated:   June 4, 2014                  /s/ Kenneth S. McHargh
                                       Kenneth S. McHargh
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).